UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. THOMAS J. AQUILINO, JR., *SENIOR JUDGE*

---

| | |
|---|---|
| MEYER CORPORATION, U.S., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Court No. 13-00154 |
| : | |
| UNITED STATES OF AMERICA, : | |
| : | |
| Defendant. : | |
| : | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR A STATUS CONFERENCE**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

BEVERLY A. FARRELL
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-0483 or 9230
Attorneys for Defendant

Dated:  December 30, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. THOMAS J. AQUILINO, JR., *SENIOR JUDGE*

| | |
|---|---|
| MEYER CORPORATION, U.S., | |
| Plaintiff, | |
| v. | Court No. 13-00154 |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A STATUS CONFERENCE

Defendant, United States (the Government) respectfully submits its response to plaintiff's, Meyer Corporation, U.S. (Meyer), motion for a status conference, Docket No. 196, as modified by its December 12, 2022 motion to correct, Docket No. 197.[1]

### BACKGROUND

Meyer commenced this action on April 16, 2013, seeking first-sale treatment for its imported cookware from the People's Republic of China, and duty-free treatment under the Generalized System of Preferences (GSP) for certain cookware imported from Thailand, a beneficiary developing country (BDC). Summons, Docket No. 1. After extensive discovery, the parties cross-moved for partial summary judgment on whether cookware sets containing a non-*de minimis*, non-BDC component could qualify the entire set for GSP treatment; and whether Meyer's imported cookware is viably valued at the price between the Thai producer and a middleman (first-sale price), both of whom are related to Meyer. *Meyer Corp., U.S. v. United*

---

[1] The Government will not be responding to the motion to correct, to which we consented, because this correction accurately reflects plaintiff's error in attempting to communicate with Government counsel.

*States*, 255 F. Supp. 3d 1348 (Ct. Int'l Trade 2017) (*Meyer I*).

On the set issue, the Court determined that the presence of a non-BDC component in a set would not preclude BDC components from receiving GSP treatment, although such treatment would not extend to a non-BDC component. *Meyer I* at 1355-59. However, the issue of whether the Thai-made components were entitled to duty-free treatment under the GSP was yet to be determined.

In determining whether first-sale could present a viable value for the related entities, the Court found that the Government had not waived the issue of Meyer's failure to provide its parent's financial information as requested by during discovery. *Meyer I* at 1360-61. The Court further held that "[a]ll of the entities relevant to that issue [*i.e.* dealing at arm's length] are related, and therefore the financial information pertaining to the parent is also relevant to examining whether any non-market influences affect the legitimacy of the sales price." *Meyer I* at 1361. Finally, after noting that first-sale transaction issue revealed disputed material facts, the Court required the parties to confer and propose how to proceed. *Meyer I* at 1362.

Ultimately, a trial was held from October 7 to October 11, 2019 on the issue of whether certain Thai cookware had undergone double substantial transformation and satisfied the requirements for duty-free treatment under the GSP; and the issue of whether the first-sale transaction price was a viable value for the imported merchandise. Between the 2017 *Meyer I* decision and the October 2019 commencement of trial, Meyer did not amend its discovery responses to include its parent's financial information. Although Meyer presented direct testimony from five witnesses at trial, such testimony did not include witnesses from Meyer Manufacturing Company Limited (Meyer Hong Kong) or from Meyer International Holdings Limited (Meyer Holdings), the direct parent company of Meyer, the Thai Producer, Meyer

Macau, Meyer Hong Kong, and the indirect parent of the China Producer.

After trial, the parties submitted competing findings of fact and conclusions of law. The Court issued its decision on March 1, 2021. *Meyer Corp., U.S. v. United States*, Slip Op. 21-26, 2021 WL 777788 (Ct. Int'l Trade Mar. 1, 2021) (*Meyer II*). After considering the parties' post-trial submissions, the Court adopted the Government's recital of the facts from trial. *Meyer II* at *50. The Court concluded that GSP treatment was not available for Thai cookware manufactured from steel discs obtained from the People's Republic of China because no double substantial transformation of the discs had occurred by the Thai manufacturing process. *Meyer II* at *50.

The Court further held that "[b]ased on the applicable law and the evidence adduced at trial, the plaintiff has also failed to establish that it should be entitled to use the transaction value between the China producer and Meyer Hong Kong or the Thai producer and Meyer Macau ('first sale') for the appraisement of the imported cookware." *Meyer II* at *50. Although the Court noted that, for the "all costs plus profit" test, costs are critical and the inputs from the PRC are suspect, it also found that "no CBP regulation requires that the 'firm' mentioned in 19 C.F.R. §152.103(l)(1)(iii) be the 'parent' of the importing party." *Meyer II* at *50.

But even if the costs inputs were not suspect, the Court observed that the parent, "Meyer Holding[,] presumptively had the ability to influence the price paid or payable for them." *Meyer II* at *51. Moreover, "[w]ithout financial statements, the court has no concept of the extent to which the finances of the Meyer group units are truly independent 'silos' of one another, or the extent to which there might have been state influence or assistance to some degree." *Meyer II* at *51.

On April 29, 2021, Meyer appealed the Court's decision. The outcome of that appeal is

3

discussed in the next section.

## THE MOTION

In its revised status conference motion, plaintiff seeks a Court conference "for the purpose of discussing [with] the parties the most efficient way to advance this litigation forward after issuance of the Federal Circuit Court of Appeals mandate." Docket No. 197-2 at 1. However, the formal mandate, dated October 3, 2022, was issued "[i]n accordance with the judgment of [the appellate court], entered August 11, 2022." Docket No. 193. The time for either party to file a petition for writ of certiorari with the U.S. Supreme Court ended on November 9, 2022. No such petition was submitted by either party.

The August 11, 2022 judgment affirmed the Court's "denial of duty-free treatment for the cookware manufactured in Thailand." *Meyer Corporation, U.S. v. United States*, 43 F.4th 1325, 1331-32, (Fed. Cir. 2022) (*Meyer III*). Further, that judgment held that the Court misinterpreted the Federal Circuit's decision in *Nissho Iwai American Corp. v. United States*, 982 F.2d 505 (Fed. Cir. 1992), by requiring plaintiff to "show the absence of all 'distortive nonmarket influences.'" *Meyer III*, 43 F.4th at 1332. As a result of the misreading of *Nissho Iwai*, the Federal Circuit "vacate[d] and remand[ed] for the court to reconsider whether Meyer may rely on the first-sale price."

## COURT ANNEXED MEDIATION

To the extent the Court would like to hold a status conference in this matter, the Government stands ready, willing, and able to participate, should the Court find a conference helpful. We defer to the sound discretion of the Court for this request. However, as we explain further below, the evidentiary record of this case shows that a conference is not necessary for the Court to conduct its reconsideration of whether Meyer may rely on the first-sale price, in

4

accordance the Federal Circuit's judgment.  Similarly, Meyer's suggestion that "Court Annexed Mediation is likely to be helpful," Docket No. 197-2 at 3, is premature.  It assumes that this Court, upon reconsideration of an extensive trial record, would be incapable of rendering a judgment after eliminating consideration of the potential effects of the People's Republic of China being a non-market economy from its prior analysis, or that the Court would not have already scheduled a conference if it required assistance from the parties.

The Government submits that, based on the trial record made before it, the Court's reconsideration of the credible and admissible evidence adduced at trial leads ineluctably to the conclusion that Meyer failed to establish entitlement to first-sale value for the appraisement of its imported cookware.  Therefore, no mediation is necessary.

## **MOTION FOR RETRIAL**

Meyer proposes that "retrial is an appropriate way to move this litigation forward on a record void of the nonmarket economy issue, which largely decided the previous judgement [sic]."  Docket No. 197-2 at 4.  In support of its proposal, Meyer directs the Court to its "broad discretion in deciding a Rule 59 motion for reconsideration or rehearing."  *Id.*  Meyer's proposal should be rejected for several reasons.

First, Meyer relies upon U.S. Court of International Trade Rule 59.  However, under Rule 59, Meyer's request is late.  Rule 59(b) provides that "[a] motion for a new trial or rehearing must be served not later than 30 days after the entry of judgment or order."  The Court's judgment was entered on March 1, 2021.  This motion was originally filed on December 9, 2022.

Next, Meyer misapprehends the Court's decision by claiming it was largely decided based on the nonmarket economy issue.  Although the Court observed that "the real costs of inputs from the PRC are suspect, given its status as a nonmarket economy country," the Court's

5

analysis continued:

> Even if "true" costs of such inputs could be determined, *Meyer Holding presumptively has had the ability to influence the price paid or payable for them,* for example by providing its subsidiaries access to credit and capital on terms that are not available to competitors without the same level of bargaining power with creditors, or even at "below market" rates. *Without financial statements, the court has no concept of the extent to which the finances of the Meyer group units are truly independent "silos" of one another*, or the extent to which there might have been state influence or assistance to some degree. Statutory assists do not encompass financial assistance, of course, *but the broader concern here is over market-distortive influence, either with respect to the plaintiff directly* or the provision of inputs generally.
>
> The most that plaintiffs' witnesses could testify to was that they were unaware of any such assistance, and to a person they flatly denied that the PRC government provided any assistance or influence whatsoever, arguably a dubious proposition. At trial, the defendant only lightly explored the extent to which such considerations might be considered market-distortive. But then again, the defendant never had the ability to probe deeper, in part because it was never provided the financial information it requested in discovery in order to be able to ask or answer probing questions.
>
> The court understands that the Meyer parent is not subject to this litigation and that the plaintiff, as its "independent" subsidiary, can claim an inability to obtain such information from it. However, *given that the parent has an interest in seeing these types of matters resolved favorably, it is therefore presumed to be forthcoming, even unprompted, to provide whatever CBP deems necessary to assist in their resolution, and the fact that in that regard there has apparently been considerable "resistance" throughout this case to that not unreasonable discovery request and the "assistance" that the parent could have provided its subsidiary to address necessary questions with respect to concerns over nonmarket influences, speaks volumes.*
>
> All of the foregoing leads the court to doubt that accurate ascertainment of the "true" value of the "price paid or payable" at the first sale level in the customs duty sense has been demonstrated in this case.

Meyer II at *50-51 (emphasis added).

6

As the Court's analysis shows, Meyer's failure to provide the financial information requested by the Government during discovery provided an independent reason as to why Meyer could not demonstrate a true first-sale value absent of influence—not from a nonmarket economy country—but from the relationships of the related parties.  And Meyer had been forewarned by the Court's August 2017 decision as to the importance of this financial information but chose not to supplement its discovery responses.

Further, "[a]lthough this Court may exercise such discretion to rectify a significant flaw in the conduct of the original proceeding, [t]he purpose of a rehearing is not to relitigate the case." *Tianjin Magnesium Int'l Co. v. United States*, 36 C.I.T. 1698, 1699 (2012) (quotations and citations omitted).  As discussed above, an extensive record was developed before the Court during the five-day trial.  This record is more than sufficient for the Court to conduct its reconsideration.

Finally, the Federal Circuit's holding that *Nissho Iwai'*s "'nonmarket influences' just refers to influences growing out of the relationship of buyer and seller that distort the 'price paid or payable'" coupled with its "remand for the court to reconsider whether Meyer may rely on the first-sale price" negates any need for a motion for retrial. Meyer had its opportunity to make its case for first-sale treatment.  Meyer's request for a retrial is inconsistent with Rule 1 of the Court's rules to "secure the just, speedy, and inexpensive determination of every action and proceeding."

## CONCLUSION

For the foregoing reasons, the Court should deny Meyer's invitations to refer this matter to court annexed mediation and/or retry this matter. Instead, in accordance with the Federal Circuit's direction, the Court should reconsider the record made before it to determine, without consideration of nonmarket economy country effects, whether Meyer may rely on the first-sale price. Nevertheless, to the extent the Court would like to schedule a status conference in this matter, the Government stands ready, willing, and able to participate.

                                        Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General
                                        Civil Division

                                        PATRICIA M. McCARTHY
                                        Director

By:    /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

        /s/ Beverly A. Farrell
        BEVERLY A. FARRELL
        Senior Trial Attorney
        Department of Justice, Civil Division
        Commercial Litigation Branch
        International Trade Field Office
        26 Federal Plaza, Room 346
        New York, New York 10278
        Tel.: (212) 264-0483 or 9230
        Attorneys for Defendant

Dated: December 30, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. THOMAS J. AQUILINO, JR., *SENIOR JUDGE*

| | |
|---|---|
| MEYER CORPORATION, U.S., | : |
| Plaintiff, | : |
| v. | : Court No. 13-00154 |
| UNITED STATES OF AMERICA, | : |
| Defendant. | : |

**CERTIFICATE OF COMPLIANCE**

    I, BEVERLY A. FARRELL, a Senior Trial Attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant's Response to Plaintiff's Motion for a Status Conference, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures and contains 2,137 words.

                                                    /s/ Beverly A. Farrell
                                                    Beverly A. Farrell