Slip Op. 23-13

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
- - - - - - - - - - - - - - - - - - - - -x  Senior Judge Aquilino

MEYER CORPORATION, U.S.,                   :

                    Plaintiff,             :

             v.                            :  Court No. 13-00154

UNITED STATES,                             :

                    Defendant.             :

- - - - - - - - - - - - - - - - - - - - -x
```

<u>Opinion & Order</u>

[Upon appellate remand to "the court to reconsider whether Meyer may rely on the first-sale price", that reconsideration on the record at bar concludes that it may not.]

Decided: February 9, 2023

<u>John M. Peterson</u>, <u>John P. Donohue</u>, <u>Richard F. O'Neill</u>, and <u>Patrick B. Klein</u>, Neville Peterson LLP, New York, NY, for the plaintiff.

<u>Justin R. Miller</u>, Attorney-in-Charge, and <u>Beverly A. Farrell</u>, Senior Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, New York, NY, and <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, Civil Division, and <u>Patricia M. McCarthy</u>, Director, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for the defendant.

AQUILINO, Senior Judge: The mandate of the U.S. Court of Appeals for the Federal Circuit (CAFC") having issued pursuant to its decision to remand <u>supra</u> <u>sub</u> <u>nom</u>. <u>Meyer Corp. v. United States</u>,

43 F.4th 1325, 1333 (2022) ("Meyer III"), has led the parties to file papers in regard thereto.

Presumed herein is familiarity with this test case on valuation under 19 U.S.C. §1401a of 125 different sets of pots and pans imported from the People's Republic of China ("PRC") and the Kingdom of Thailand and the extensive record and prior decisions thereon. See Meyer Corp. v. United States, 41 CIT ___, 255 F.Supp.3d 1348 (2017) ("Meyer I") (summary judgment granted in part and denied in part); Meyer Corp. v. United States, 45 CIT ___, Slip Op. 21-26 (March 1, 2021) ("Meyer II") (opinion after trial; judgment for defendant).

The CAFC affirmed the finding that steel discs exported to Thailand from China underwent only one substantial transformation, not two, and that the resultant cookware for the U.S. was thus not entitled to duty-free treatment. Meyer III, 43 F.4th at 1330-32. It also vacated and remanded plaintiff-appellant's first-sale claim, stating that "there is no basis in the statute for Customs or the court to consider the effects of a nonmarket economy on the transaction value and require a party to show the absence of all 'distortive nonmarket influences.'" Id. at 1332. The CAFC decision goes on to state that 19 U.S.C.

§1401a(b)(2)(B) "concerns effects of the relationship between the buyer and seller, not effects of government intervention, and especially not with government intervention that affects the industry as a whole."  Id. at 1332-33.

From this court's perspective, because the purpose of the General Agreements on Tariff and Trade was to promote trade liberalization among market-oriented countries and help spread democratic values that were associated with capitalism, in opposition to fascism and the "Iron Curtain" that was descending on Europe in the aftermath of World War II,[1] the fact that the valuation statute presupposes a "market" environment focusing on the individual transaction is unsurprising.  That was the purpose of the GATT negotiations.

That does not mean, however, the statute as written necessarily contemplates zero distinction between sellers operating in market economies and those operating in nonmarket economies,

---

[1] See, e.g., GATT 1947: How Stalin and the Marshall Plan helped to conclude the negotiations, available at https://www.wto.org/english/tratop_e/gatt_e/stalin_marshall_conclude_negotiations_e.htm (last checked this date).

particularly in view of the judge-made "first sale" rule[2] on the "price paid or payable" of 19 U.S.C. §1401a(b)(1) ("[i]f sufficient information is not available, <u>for any reason</u>,[3] with respect to any amount" necessary to increase the "price actually paid or payable for imported merchandise . . . by the amounts attributable" to the items listed as (A) through (E) of §1401a(b)(1)(packing costs, selling commissions, assists, royalties, license fees, and, of some import to this case, "the proceeds of any subsequent resale, disposal, or use of the imported merchandise that accrue, directly or indirectly, to the seller"), then the transaction value of the imported merchandise concerned "shall" be treated as one that cannot be determined). It was the CAFC itself, in fact, which articulated the concept of "the absence of any non-market influences that affect the legitimacy of the sales price" -- apart from the language of the statute itself. <u>See</u> <u>Nissho Iwai Am. Corp. v. United States</u>, 982 F.2d 505, 509 (Fed.Cir. 1992).

---

[2] That rule evolved from the prior concept of "export value." <u>See</u> Tariff Act of 1930 §402(d) (June 17, 1930). It has been maintained by various judicial decisions, even under the current valuation statute. <u>See</u>, <u>e.g.</u>, <u>United States v. S.S. Kresge Co.</u>, 26 CCPA 349, 352 (1939); <u>R.J. Saunders & Co. v. United States</u>, 42 CCPA 55, 59 (1954); <u>United States v. Getz Bros. & Co.</u>, 55 CCPA 11 (1967); <u>E.C. McAfee Co. v. United States</u>, 842 F.2d 314 (Fed. Cir. 1988); and <u>Nissho Iwai Am. Corp. v. United States</u>, 982 F.2d 505 (Fed.Cir. 1992).

[3] Emphasis added.

Be that as it has been, the current CAFC panel having, seemingly unequivocally, answered Meyer II's earlier question or observation on that point, this court, accordingly, will continue its consideration of the substance of the matter, as developed before, during, and after trial.

I

The plaintiff commenced this action seeking first-sale treatment for its imported cookware from the PRC, and duty-free treatment under the Generalized System of Preferences (GSP) for certain cookware imported from Thailand, a beneficiary developing country (BDC). After extensive discovery, the parties cross-moved for partial summary judgment on whether cookware sets containing a non-de minimis, non-BDC component could qualify the entire set for GSP treatment; and whether Meyer's imported cookware is viably valued at the price between the Thai producer and a middleman (first-sale price), both of which are Meyer related. Meyer I, 41 CIT at ___, 255 F.Supp.3d at 1350-51.

On the set issue, this court determined that the presence of a non-BDC component in a set would not preclude BDC components from receiving GSP treatment, although such treatment would not extend to a non-BDC component. Id., 41 CIT at ___, 255 F.Supp.3d

at 1355-59. However, the issue of whether the Thai-made components were entitled to duty-free treatment under the GSP was yet to be resolved. In determining whether first-sale could present a viable value for the related entities, this court found that the government had not waived the issue of Meyer's failure to provide its parent's financial information as requested during discovery. Id., 41 CIT at ___, 255 F.Supp.3d at 1360-61. This court further held that "[a]ll of the entities relevant to that issue [i.e. dealing at arm's length] are related, and therefore the financial information pertaining to the parent is also relevant to examining whether any non-market influences affect the legitimacy of the sales price." Id., 41 CIT at ___, 255 F.Supp.3d at 1361. Finally, after noting that the first-sale-transaction issue revealed disputed material facts, this court required the parties to confer and propose how to proceed. Id., 41 CIT at ___, 255 F.Supp.3d at 1362.

Ultimately, a trial was held on the issue of whether certain Thai cookware had undergone double substantial transformation and thus satisfied the requirements for duty-free treatment under the GSP, and also the issue of whether the first-sale-transaction price was a viable value for the imported merchandise. Between the Meyer I decision and commencement of the

trial, Meyer did not amend its discovery responses to include its parent's financial information. Although the plaintiff presented direct testimony from five witnesses at trial, such testimony did not include witnesses from Meyer Manufacturing Company Limited (Meyer Hong Kong) or from Meyer International Holdings Limited (Meyer Holdings), the direct parent company of the plaintiff, the Thai producer, Meyer Macau, Meyer Hong Kong, and the indirect parent of the PRC producer.

After trial, the parties submitted competing findings of fact and conclusions of law. After considering them, this court concluded that GSP treatment was not available for Thai cookware manufactured from steel discs obtained from the PRC because no double substantial transformation of the discs had occurred by the Thai manufacturing process. Meyer II at *50.

This court further held that, "[b]ased on the applicable law and the evidence adduced at trial, the plaintiff has also failed to establish that it should be entitled to use the transaction value between the China producer and Meyer Hong Kong or the Thai producer and Meyer Macau ('first sale') for the appraisement of the imported cookware." Id. This court noted that, for the "all costs plus profit" test, costs are critical and

that the costs of the inputs from the PRC are suspect.[4]  It also found that "no CBP regulation requires that the 'firm' mentioned in 19 C.F.R. §152.103(l)(1)(iii) be the 'parent' of the importing party." Id.

Regardless, even if the costs of inputs were not suspect, this court observed that the parent company "Meyer Holding[s] presumptively had the ability to influence the price paid or payable for them." Id. at *51.  Moreover, "[w]ithout financial statements, th[is] court has no concept of the extent to which the finances of the Meyer group units are truly independent 'silos' of one another, or the extent to which there might have been state influence or assistance to some degree." Id.  For whatever reason, in vacating and remanding Meyer II, the CAFC does not address these observations.

II

Facts drive the law.  It is not the other way around.  Even ignoring the fact that the claimed transaction values involve

---

[4] The CAFC decision does not directly address this necessary observation, which remains an element of this cost-plus-profit case, even if 19 U.S.C. §1401a(b)(2)(B) "concerns effects of the relationship between the buyer and seller, not effects of government intervention, and especially not with government intervention that affects the industry as a whole."

inputs from a non-market-economy country in the merchandise at issue, this court still cannot ignore plaintiff's non-responsiveness to defendant's request for information during discovery. The fact that the government herein was not provided with the financial information pertinent to plaintiff's parent company hampered its ability to discern whether or not the parent of the plaintiff provided any form of assistance to reduce costs. As this court previously observed (here excising any inference of "nonmarket consideration" in accordance with the CAFC opinion):

> Even if "true" costs of such inputs could be determined, Meyer Holding[s] presumptively has had the ability to influence the price paid or payable for them, for example by providing its subsidiaries access to credit and capital on terms that are not available to competitors without the same level of bargaining power with creditors, or even at "below market" rates. Without financial statements, the court has no concept of the extent to which the finances of the Meyer group units are truly independent "silos" of one another . . ..
>
> The most that plaintiffs' witnesses could testify to was that they were unaware of any such assistance . . .. At trial, the defendant only lightly explored the extent to which such considerations might be considered [ ]distortive. But then again, the defendant never had the ability to probe deeper, in part because it was never provided the financial information it requested in discovery in order to be able to ask or answer probing questions.
>
> The court understands that the Meyer parent is not subject to this litigation and that the plaintiff, as its "independent" subsidiary, can claim an inability to obtain such information from it. However, given that the parent has an interest in seeing these types of matters

> resolved favorably, it is therefore presumed to be forthcoming, even unprompted, to provide whatever CBP deems necessary to assist in their resolution, and the fact that in that regard there has apparently been considerable "resistance" throughout this case to that not unreasonable discovery request and the "assistance" that the parent could have provided its subsidiary to address necessary questions . . ., speaks volumes.
>
> . . . [T]he foregoing leads the court to doubt that accurate ascertainment of the "true" value of the "price paid or payable" at the first sale level in the customs duty sense has been demonstrated in this case.

Meyer II at *50-51.

As the defendant points out, the prior analysis shows that plaintiff's failure to provide the financial information requested by it during discovery provided an independent reason as to why Meyer could not demonstrate a true first-sale value absent of influence - not from a nonmarket-economy country per se — but from the relationships of the related parties. And the plaintiff had been forewarned by the court's Meyer I decision as to the importance of that financial information but chose not to supplement its discovery responses.

Furthermore, "[a]lthough this Court may exercise such discretion to rectify a significant flaw in the conduct of the original proceeding, [t]he purpose of a rehearing is not to relitigate the case." Tianjin Magnesium Int'l Co. v. United

States, 36 CIT 1698, 1699 (2012) (quotations and citations omitted). As discussed above, an extensive record was developed before this court. It is more than sufficient for conducting reconsideration now.

Finally, this court considers that the CAFC's holding of Nissho Iwai's "nonmarket influences" as simply referring to influences growing out of the relationship of buyer and seller that distort the price paid or payable, coupled with its "remand for th[is] court to reconsider whether Meyer may rely on the first-sale price", negates any need for further proceedings now.[5] The plaintiff had more-than-adequate opportunity to make its case for first-sale treatment, and any suggestion now for a retrial is inconsistent with Rule 1 of the USCIT rules to "secure the just, speedy, and inexpensive determination of every action and proceeding."

### III

In view of the foregoing, and given the precision of the CAFC remand quoted above, mandating Customs and Border Protection to acquiesce in plaintiff's plea for liquidation of its merchandise

---

[5] Plaintiff's motion(s) filed after the CAFC mandate issued regarding possible such proceedings can be, and they hereby are, dismissed.

Court No. 13-00154                                                      Page 12

on the basis of its first sale is not warranted, and this court's judgment entered in <u>Meyer II</u> is therefore hereby affirmed.

    So ordered.

Decided:  New York, New York
          February 9, 2023

                                     <u>/s   Thomas J. Aquilino, Jr.</u>
                                            Senior Judge